Anderson, J.,
delivered the opinion of the court.
The complainant, George G. Lobdell, and Charles Bush of the state of Delaware, and J. P. Pinker, Samuel M. Lantz and Jospeh Marston, of Virginia were, in 1854, the owners of Caroline furnace in the county of Shenandoah, Virginia, and of Union forge, and of the lands and personal property belonging to them respectively, which they were operating in partnership, under the name and style of Marston, Bush & Co.—the two former owning two-fifths in the furnace and one-third in the forge, and the latter owning one-fifth each in the furnace and one-fifth of two-thirds each in the forge property. Lobdell and Bush afterwards purchased Pinker’s one-fifth interest in the furnace property and partnership, which gave to them each three-tenths in the same.
The said Lobdell & Bush were also partners in carrying on a large foundry and machine shops in Wilmington, Delaware, under the name and style of Bush & Lobdell. And their establishment there seems to have afforded a market for most of the pig iron made at the Caroline furnace, though it supplied them with a very inconsiderable portion of the pig iron they consumed.
Charles Bush, one of the partners, died on the 5th of October, 1855, leaving a widow, and four children, one of whom was the wife of Henry S. McComb, the appellant, *187 who also resided at Wilmington, in Delaware. And ° ' and William Bush (not the son of Charles Bush, deceased), qualified as administrators of said estate, and the former, on the 19th of May, 1856, qualified as administrator said decedent in Virginia.
After the death of Charles Bush, the furnace was con-tinned in operation. The bill in this ease alleges, that the terms of said partnership, and its operations, are more fully described in an original bill filed in this court, and still pending, in which McComb and wife are plaintiffs, and complainant and wife and ais. are defendants; which he makes an exhibit with his bill. He further avers, that “ the question of the continuance of said partnership after the death of Charles Bush, was submitted for the consideration and determination of this court by said bill, and it was determined in the negative, by a decree rendered in said cause, on the 28th of March, 1872.” And yet he “represents that said H. S. McComb, professing to act for himself, and on behalf of the estate and widow and heirs at law .of Charles Bush, deceased, of whom his wife was one, and with the concurrence of Joseph Maratón, the other surviving partner, entered into a verbal agreement, to operate said Caroline furnace and carry on the business appertaining to the same, in the name of the old firm of Marston, Bush & Co., the said McComb, representing and controlling the interest previously owned by Charles Bush, deceased.
The contract as alleged, is a contract of the widow and heirs of Charles Bush, deceased. The bill avers that it was entered into on their behalf by McComb, and for himself. How for himself? It could only be in the interest of his wife, who was one of the heirs. He had no • authority as administrator. The partnership effects did not come into his hands in the capacity of administrator; but were held by the surviving partners. It was their business to retain the partnership property, pay the debts, *188 and wind up the concern, and to pay over to the administrator whatever might be due his intestate, upon the settlement of the partnership concern. The bill does not represent him as acting in his capacity as administrator. It is essentially a contract, as alleged, of the widow and heirs, entered into on their behalf by McComb, he being interested in right of his wife, through whom alone he could act, to operate said Caroline furnace, and to carry on the business appertaining to the same, in the name of the old firm of Marston, Bush & Co. It was in substance a contract, as alleged, by the widow and heirs of 'Charles Bush, deceased, with the surviving partners, that they should continue the business under the old firm name, said McComb representing and controlling on their behalf the interests previously owned by Charles Bush, deceased.
Now this bill affirms, as we have seen, that the question whether there was a continuance of said partnership, after the death of Charles Bush, was submitted for the consideration and determination of this court in that other suit, and that it was determined in the negative by the decree of the court rendered in that cause. It would seem then to appear on the face of the bill, that the question as to the continuance of the partnership by the widow and heirs had been adjudicated and determined in another suit between the same parties. And if so, the bill was demurrable on that ground.
And when we turn to the bill itself, which the complainant has brought into this record, and made an exhibit with his bill, it would seem that the same matter was substantially put in issue in that suit. It alleges that “the business was still carried on by the survivors, without any new contract of partnership.” Again it avers, that “the business has been carried on since by said Marston & Lob-dell, but without any new contract with the heirs of said Charles Bush, deceased, or his administrator, and your *189 orators desire the court to determine whether the administrator and heirs at law of said Charles Bush, deceased, are to be considered as partners, or whether the are to be charged with rent for the share belonging to the estate of said Bush, deceased.
The defendant McComb in this suit filed a demurrer to the plaintiff’s bill, which was overruled by the court, and the defendant then filed his answer. Whether the demurrer ought to have been sustained on the ground already stated depends upon the fact whether the matter admitted by the bill to have been decided in the former suit, was an adjudication of the question arising upon the contract alleged in this case. Whether it be so or not, the matters alleged in the former bill were sufficient to put in issue the fact of such a contract as is alleged in this ease, and it is not perceived why the whole matter in controversy in this suit might not have been decided in that.
But the bill afterwards admits, that the contract alleged to have been made was not valid or binding on those on whose behalf it was made, for want of authority by McComb, who professed to act on their behalf. It consequently appears upon the face of the bill that the only contract upon which it seeks to establish the existence of a partnership was no contract at all. And it is sought to hold McComb himself bound by a contract, which he did not make on behalf of himself, because he was mistaken as to his authority, or made a misrepresentation as to his authority to enter into the contract on behalf of those on behalf of whom he made it. We do not think this position can be maintained on reason or authority, and consequently are of opinion, that upon this ground the demurrer ought to have been sustained. But upon the merits.
. The defendant McComb emphatically and unqualifiedly, denies the allegation of the bill, that he had ever made *190 con*:racl alleged. His language is, “Respondent denies that so far as he knows, the widow, heirs, or he, as administrator of Charles Bush, deceased, after the death of the said Charles Bush, ever formed or expressed to George G. Lobdell, or to- Joseph Marston, or to any other person or persons whomsoever, any intention or expectation of renewing or continuing in any way any new partnership, or continuance of the old partnership of Marston, Bush & Co. under that name, or any other; or that this respondent, on behalf of said widow and heirs, or for himself as administrator, or on his own account, ever entered into any agreement, understanding, contract or arrangement, written or verbal, to operate said Caroline furnace, and to carry on the business appertaining to the same, in the name of the old firm of Marston, Bush & Co. or in any other name, to and with said George G. Lobdell and Joseph Marston, or either of them, or any other person or persons whatsoever.”
This answer, so far as it negatives the contract alleged in the bill, is fully sustained by the deposition of the complainant himself, given in the other suit, and which the defendant, McComb, exhibited in this suit, upon the issue made by the bill and answer, to contradict the allegation of the bill. So that, upon the merits, the contract alleged in the bill was disproved by the plaintiff’s own deposition, which had been given in the other suit.
But the plaintiff, being advised of this, sought to sustain his cause by shifting his ground, and making a new case. He had to make a new case, for he never could succeed in the case made by his bill. It had nothing to stand on. Its very foundation—the contract which it alleged was proven by himself never to have had any existence. He thereupon, more than three years after the institution of the suit, and after the cause had been before a master, depositions taken, and report made upon the issues made upon the original bill and answer, and exceptions taken *191 thereto, filed his supplemental bill, in which he alleges , ’ V , ’ , . s. and sets out an entirely new contract oí partnership, in the following language, viz: “That the said Henry McComb, on the 19th day of May, 1856, for himself and one David P. Bush (the said McComb professing and assuming to have the necessary authority from David P. Bush) verbally agreed to form and enter into, and did form and enter into, a co-partnership with your orator and the said Joseph Marston, for the purpose of manufacturing iron at Caroline furnace, in said county; that the interest of said Henry S. McComb and David P. Bush (the said McComb professing and assuming to act for said David P. Bush) in said concern was two-fifths, that of your orator two-fifths, and that of the said Joseph Marston one-fifth, and that the said partners were to share in the profits or losses in that proportion.” He then adds: “Tour orator has since discovered and avers and charges that the said Henry S. McComb had no authority from the said David P. Bush to make and enter into said agreement of co-partnership for and on behalf said David P. Bush; that the said David P. Bush was not a partner in said concern, and never had any interest therein.” The bill thus assumes that McComb, by reason of said agreement and want of authority to act for said David P. Bush, and by reason of his subsequent conduct and acts in relation to the business of said co-partnership as set forth in the original bill, is to be regarded as having acted for himself alone, having an interest in said co-partnership of two-fifths, and being entitled to two-fifths of the profits or liable for two-fifths of the losses of said business. The complainant, after repudiating himself the contract as alleged—that is, a contract between the survivors and McComb and David P. Bush—insists upon it as a contract with McComb alone, and so rests his case.
The defendant, McComb, objected to the filing of this bill as a supplemental bill in this cause, upon the ground *192 that it contradicted the original bill and is repugnant to it; but his objections were overruled.
The defendant then demurred to the supplemental bill, an(j set out the grounds upon which it was insufficient in law, as follows:
((2Tjrst_ Because it contradicts the statements of the original bill, and introduces a completely new case.
“ Second. Because it alleges that the contract of partnership was on behalf of D. P. Bush, the said McComb representing the said D. P. Bush, and that said McComb was not the authorized agent of D. P. Bush. This then being the contract set up in the bill, complainant is not entitled to enforce his remedy thereupon in a court of chancery.
“ Third. Because it alleges an agreement on behalf of H. S. McComb to form a partnership: which agreement the said H. S. McComb did not carry out. Upon such a breach of contract, complainant had his remedy at law, and is not entitled to sue thereon in chancery.
“Fourth. Because said D. P. Bush was not made a party to the suit.”
Without entering upon a discussion of these several grounds of demurrer, we are of opinion that they present substantially good grounds for sustaining it, and that the court erred in overruling the demurrer.
But waiving that, we will consider the case as it now stands, on the supplemental bill, upon its merits. The answer of McComb denies in the whole, and in every part, comprehensively and specially, positively and unequivocally, the allegations of the bill touching the contract. Let us first briefly consider the contract itself, as alleged. The statement is that it was a verbal contract made between H. S. McComb, for himself and David P. Bush, and George G. Lobdell and Joseph Marston (who were survivors of the old firm of Marston, Bush & Co.), on the 19th of May, 1856, in the state of Virginia, to form and enter into a *193 partnership for the purpose of manufacturing iron at Garoline furnace, in the county of Shenandoah, Virginia. It does not stipulate what shall be the input of each except that McComb’s and Bush’s interest in the concern was two-fifths, Lobdell’s two-fifths, and Joseph Marston’s one-fifth. Now, that might have been a sufficient stipulation as to Lobdell and Marston, for it describes the exact interest which they had in the firm of Marston, Bush & Co.; but not so as to McComb and D. P. Bush. Even excluding Ellen, the widow of Charles Bush, McComb’s wife and David P. Bush had severally only an interest each of one-fourth of two-fifths, and McComb had nothing only in right of his wife. It could not with truth be said that their interest was two-fifths in the concern. In this case it will be observed that it is not pretended that McComb professed to act for the widow and heirs or in the capacity of administrator, but only for himself and David P. Bush; and yet there is no stipulation alleged on the part of McComb that he will pay in anything for himself or David P. Bush to the capital of the concern.
But with whom was the contract made? Lobdell was not present. He was absent in a distant state. Nor does it appear that Marston participated in making such a contract. Nor is there a particle of testimony to show that any one was present and witnessed the making of the alleged contract. Nor is there any evidence in fact of the making of such a contract. We have seen that it could not have been made with Lobdell on the 19th of May, 1856, as the bill alleges, because Lobdell was in Wilmington, Delaware, and McComb was at that time in Shenandoah county, Virginia, which is clearly inferrible from the testimony of Lobdell. John J. Stoneburner testifies, for the complainant, that McComb was at Caroline furnace in May, 1856, and directed Marston and himself to take an inventory of the property on hand, real and personal, to take a list of balances from the .books, and to transfer *194 t^iem ío a new set °I books, and, as soon as it was done, to send a list or statement of all to Delaware. As soon that was completed, Marston could go ahead with the furnace: that he and David Bush had taken, or would take, the interest of Charles Bush in Caroline furnace; that the business should be carried on under the same firm name, but a new set of books should be opened. On cross-examination he said, “Mr. McComb told me that'he and David Bush would take the place of Charles Bush.” That does not prove the contract alleged in the bill. It does not prove a contract at all. It was only a remark, not to either of the surviving partners, but to a clerk, that he and David Bush would take Charles Bush’s interest in the concern. That might have been his expectation or in-. tention then, but does not prove that he and David ever did so. It does not prove that he made a contract for himself and David Bush that they would go into the concern and take each of them one-fifth interest in it. Stone-burner testifies that McComb was there only three days, and he never knew of his ever being there afterwards. If he made the contract alleged, it must have been made during those three days. He clearly had not made a contract at the time he made the remark to the witness, for he only spoke of what he and David would do. And there is not an item of evidence that, whilst he was there, he ever approached Joseph Marston on the subject of a contract, much less that he had made a contract with him. If he had made a contract upon so grave a matter, there would have been some direct proof of it. He and Mars-ton could hardly have made a contract then without the clerk being informed of it—being a witness to it. And it is most improbable that they would have made a contract of partnership without reducing it to writing. And the fact that McComb never visited the place again raises a strong presumption that he never made such a contract of partnership, and that he was not interested as a partner. *195 The instructions which he gave Marston and Stoneburner ° about making an inventory of the partnership effects, writing up the old books and opening a new set of were very proper instructions, and were entirely consistent with his position, that he was not and never has been a partner. He was the administrator of Charles Bush in this state, and was then, most probably, not informed as to what were his exact relations in that capacity to the partnership property, as he afterwards learned from the instructions of his judicious counsel. But he doubtless knew that his wife and her mother and brothers had a large interest in the concern, and doubtless felt a commendable desire to protect their interests.
There is no proof that MeComb made the contract of partnership alleged by the bill, or indeed any other contract of partnership, in May, 1856, whilst he was on a visit to Caroline furnace in Shenandoah, Va.; nor is there any evidence tending to prove it. Prior to his visit to Caroline . furnace, the interest of Charles Bush’s widow and heirs in the firm was only three-tenths. It was during that visit that he purchased for them and Lobdell the one-fifth interest of Lantz, which he afterwards conveyed by deed to George G. Lobdell: one-half in his own right, the other • half in trust for the widow and heirs of Charles Bush. It seems that this deed was not made until the 28th of Oct., 1856. If MeComb and David Bush, or MeComb alone, had entered into the alleged contract of partnership 19th May, 1856, and had agreed that they would take two-fifths interest in the new concern (though the old firm at that time, by executed contract, had only a three-tenths interest in the concern), why did he not have the moiety of the Lantz interest conveyed to himself, or to David Bush and himself, instead of to Lobdell, in trust for the widow and heirs of Charles Bush, if it were not that the Said Lobdell, as surviving partner, still retained for the heirs the entire interest which their ancestor, Charles Bush, had in the co-partnership ?
*196 George Lobdell testifies, that McComb went to Vir0 * ginia in May (be thinks), 1856. He negotiated sale of and LobdelPs interest in Union forge, &g.} and purchased Samuel M. Lantz’s interest in Caroline furnace, and his interest in the assets of the firm of Marston, 2usp ^ q0-j whicl1 sale and purchase were assented to by all the adult parties in interest, and was also confirmed by the court of Shenandoah county, as to the infant heirs of Charles Bush. If he entered into a new partnership with the surviving partners, he had no interest in the assets of the firm, even after the purchase of Lantz’s interest, but one-fourth of two-fifths, which he had in right of his wife, and David Hush had only a like interest, which must have been well known to Lobdell. And yet he consents by his alleged ■contract to give each of them one-fifth interest in the concern.
To proceed with his testimony : He says, at the same time (when he was in Virginia) H. S. McComb made arrangements for the future prosecution of the business at Caroline furnace, ordered an inventory made of the personal property, and a list of debts due to and by the firm of Marston, Bush <& Co. This, as we have before remarked, was not at all incompatible with the relation which he sustained to the company, though having no interest as a partner. But the witness says further, agreeing for himself and David Bush to take the interest which had formerly belonged to Charles Bush, and to continue the business under the firm name of Marston, Bush & 'Co., as had been done heretofore. He does not assert that he agreed for himself and David Bush to take such interest. He could not swear to that, because he did not know it of his own knowledge; for he was not present. So he mentioned it merely by way of recital; and it is all evidently founded upon information, which he received from Stoneburner, and relates to the time and place and remark made to him by McComb, which we have already *197 considered. That is evidently the source and' origin and only foundation of this testimony of Lobdell; and it was an ingenious attempt of his, to fix a liabilty on Comb for the debts of Marston, Bush & Co. That concern was owing him a large debt of $32,999.93 ; had been owing it a long time; and he was very mnch interested in getting McComb into the concern, to help to pay it, and probably to share other liabilities. He as far back as July, 1861, had endeavored to hold the old firm liable for it; evidently upon the ground that it was contracted during the continuance of the partnership; for he thought or professed to think, that there was some provision made in the articles of co-partnership of the old firm, which were lost or mislaid, which authorized the continuance of the firm after the death of one of the partners, and he claimed the right to hold the widow and heirs of Charles Bush liable for such proportion of the large debt he held against the firm, as Charles Bush would have been liable for if he was living. But this was determined against him; and upon the settlement, he fell indebted to the widow and heirs of Charles Bush in the sum of $20,859.69, and executed his bond to the widow, Ellen Bush, in the sum of $13,096.46, conditioned for the payment of $6,953.23, with interest, which was her portion of it; and like bonds to each of the four heirs, for their respective portions of the said debt. To Henry S. McComb, in right of his wife Elizabeth, he gave his obligation in the sum of $6,953.22, conditioned for the payment of $3,476,61, his proportion, with lawful interest payable semi-annually, and to David P. Bush he gave a like bond for same amount.
How, how was this large debt contracted by Lobdell, against the firm of Marston, Bush & Co. ? Bush & Lob-dell, both the old firm and the new, purchased the iron made at Caroline furnace, and both the old and new made advances to Marston, Bush & Co., in excess of the *198 iron received from them, and for such advances as were made, prior to the 1st of July, 1856, the administrators of Charles Bush settled with Lobdell, the surviving partner of the old Wilmington firm; but refused to 'settle with Lobdell, for advances made subsequent to that time, because of the dissolution of the firm by Charles Bush’s death; which lopped off from his account the large sum before mentioned. But how did it become a debt due to Lobdell individually ? Why was the excess of advances made by the new firm of Lobdell & Co. charged up to Lobdell individually ? If McComb'and David Bush had had two-fifths interest in Marston, Bush & Co., it is not probable that he (Lobdell) would have consented to be responsible for the excess of advances, thrown from their shoulders, aud cast on him individually. And if he had paid Marston, Bush & Co.’s drafts, because, as he intimates, lie had the money, and Bush & Lobdell did not always have it just at. hand, if they had been alike interested with him as partners, in sustaining the credit of the Virginia concern, he would have had all the drafts of Marston, Bush & Co. entered on the books of Bush & Lobdell, and if paid with his money, debited to the Wilmington firm and credited to him. . And the fact that he did not, but allowed the whole excess of advances to Marston, Bush & Co., to be entered upon the books of the Wilmington firm on settlement, we think, is irreconcilable with his present pretention, that McComb or McComb and David Bush were co-partners of his in the Virginia firm.
And it is equally irreconcilable with that pretension, that he would have secured to McComb in July, 1861, by mortgage on his estate, the payment of the sum before mentioned, and a like sum to David P. Bush, if they were as members of the firm of Marston, Bush & Co. bound to him for their proportions—two-fifths—of the large debt of $32,999.93, which he held against that firm, without even a suggestion that what he was owing them *199 should be settled in that way; or even without an intimation that they, or either of them, were owing him any part of the debt he held against Marston, Bush & as members of that firm. If they were members of that firm, they were most unquestionably responsible to him for their proportions of this large debt. Yet living together in the same town, it is most remarkable that Lob-dell never sought páyment from them in any way, or ever suggested to them or either of them that they were owing him a portion of this debt, or to any other person, so far as it appears in this record, from 1861 to 1871, a period of ten years, when within that period, it also appears, he was at times very much straitened for money.
Verily the conduct of the complainant Lobdell has been utterly irreconcilable with his present pretensions and the claims he sets up in this suit.
He goes on further in his deposition to say, that on McComb’s return from Caroline furnace to Wilmington he stated what had been done, which met with the approbation of himself and David Bush. If he meant to include in what he says McComb communicated had been done, that he had agreed for himself and David Bush to take the interest he before mentioned in the firm of Marston & Bush, then he proves that Bush had sanctioned and confirmed the agreement, and was equally liable with McComb. But that would be inconsistent with the case made by his bill, and would prove him out of court. And if it does not prove that, it proves nothing against McComb touching the alleged contract. His testimony on that subject is all hearsay, and is most probably a mere repetition, with some amplification, of what he had heard from Stoneburner; for it goes beyond what was testified by Stoneburner, who never testified to any sort of agreement.
It is useless to pursue this investigation further. The conduct of complainant is entirely incompatible with *200 Pretensi°ns in this suit, either in his original or supplemental bill; and the interest which McComb is shown have taken in the affairs of Marston, Bush & Co., and jn the writing up of the books of that old concern, and having an accurate inventory of its effects, and in having a new set of books for its continued operations, without a new contract, and the interest which he manifested in its success by his letters and instructions, are all reconcilable with his not being, and never having been, a member of the Virginia firm, when we consider the relations in which he stood to that Virginia concern, as administrator of Charles Bush’s estate in Virginia, and as a member of his family, by marriage with his only daughter, who together with her mother and brothers had a large interest in the Virginia partnership property, and the relation which he sustained to Lobdell and to Marston, Bush & Co., by his connection with the Wilmington concern, in the one or other of which relations his said letters were written.
Against this overwhelming weight of evidence and circumstances, and the positive denial of the answer, we have the testimony of William Bush, that he “ understood from Henry S. McComb, that he was interested in the firm of Marston, Bush & Co., as it was reorganized after the death of Charles Bush.” Upon re-examination his recollection seems to have brightened and his testimony strengthened, and he says, “ I have a distinct recollection that Mr. McComb told me that he and David P. Bush had taken the interest that formerly belonged to Charles Bush in the firm of Marston, Bush & Co.” He does not give the time or place, further than to say, that he thinks it was-within a year of the formation of the new firm of Bush & Lobdell; he does not say whether before or after. But he stands alone; and his testimony cannot prevail over the sworn answer of the defendant. It is unsupported by the circumstances which support the answer, but is in *201 conflict with the decided weight of evidence in the cause. . . The most charitable view of his testimony is, that he is mistaken.
The defendant moved to withdraw the deposition of George G. Lobell from the cause after the filing of the supplemental bill. His deposition was given in another cause, and was filed in this case by the defendant to be read upon the issues made by the original bill. But his motion was overruled by the court. Waiving the decision of that question, which we have not deemed necessary in this case, we have considered the deposition of George G. Lobdell aforesaid.
The deposition of Henry S. McComb was excepted to by the plaintiff, which exception was sustained by the court, and the deposition was excluded, which ruling of the court is one of the errors assigned. We have not deemed it necessary to decide that question either, and have not considered said deposition in our decision. Upon the whole, the court is of opinion, to reverse the decrees of the circuit court, and to dismiss both bills, original and supplemental, as to the appellant, Henry S. McComb, with costs.
The decree was as follows:
This day came again the parties, by their counsel, and the court having maturely considered the transcript of the record of the decrees aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said decrees are erroneous. Therefore, it is decreed and ordered that the appellee, George G. Lobdell, pay to the appellant his costs by him about his appeal and supersedeas aforesaid here expended. And this court proceeding to pronouce such decree as the said circuit court ought to have pronounced, it, is decreed and ordered that this cause be dismissed, and that the ap *202 Pe^ant recover against the appellee, George G. Lobdell, his costs by him about his defence in the said circuit expended.
Which is ordered to be certified to the said circuit court of Augusta county.
The appellee, George G. Lobdell, having submitted a . motion on the 27th ultimo, to set aside the decree pronounced on the 25th ultimo, and grant a rehearing thereof, and the court having maturely considered the said motion and the arguments of counsel thereon, it is ordered that the same be overruled.
But for reasons appearing to the court, it is decreed and ordered that the said decree of the 25th day of September last be and hereby is modified, so as to dismiss the plaintiff’s original and supplemental bills only as to the defendant Henry S. McComb; and the cause is remanded to the said circuit court of Augusta county for such proceedings therein between the plaintiff and the administrator of Joseph Marston, deceased, as may be deemed necessary and proper to a settlement of the partnership accounts between them as the surviving partners of the old firm of Marston, Bush & Co.
Which is ordered to be certified to the circuit court of Augusta county.
Decree reversed.